UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| PLENARY INFRASTRUCTURE BELLE CHASSE, LLC | CIVIL ACTION |
| VERSUS | No. 22-2666 |
| ASPEN AMERICAN INSURANCE COMPANY | SECTION: "J"(5) |

## ORDER AND REASONS

Before the Court is a *Motion for Partial Summary Judgment* **(Rec. Doc. 23)** filed by Defendant, Aspen American Insurance Company ("Aspen"); an opposition thereto (Rec. Doc. 31), filed by Plaintiff, Plenary Infrastructure Belle Chasse, LLC ("Plenary"); and Aspen's reply (Rec Doc 34). Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **GRANTED.**

## FACTS AND PROCEDURAL BACKGROUND

Plenary is the general contractor on the Belle Chasse Bridge and Tunnel Replacement Public-Private Partnership Project ("the Project"). Plenary, as the private partner with the Louisiana Department of Transportation and Development ("LA DOTD") was responsible for financing, design-build construction, tolling, and long-term operations and maintenance for the bridge replacement. Plenary and the LA DOTD executed a Comprehensive Agreement setting out the terms and conditions for the project, including that Plenary (or its chosen subcontractor) was obligated to perform Operations and Maintenance ("O&M Work") until the existing bridge and

1

tunnel is decommissioned in accordance with the Agreement with LA DOTD. The Comprehensive Agreement also requires that Plenary or its subcontractor furnish a performance bond and payment bond to secure Plenary's obligations.

Plenary retained DBi Services, LLC ("DBi") as a subcontractor to perform the Construction Period O&M Work and entered into an O&M Contract with Plenary. As security for DBi's obligations, DBi acquired an O&M Payment and Performance Bond ("the Bond") from Aspen, naming DBi as the Principal, Aspen as the Surety, and Plenary as the Obligee. The Bond states that the DBi, Aspen, and Plenary bind themselves for all obligations incurred under the O&M Contract "in the amount of Five Hundred Ninety-Nine Thousand Four Hundred and 00/100 Dollars ($599,400.00) for the Payment Bond and in the amount of Five Hundred Ninety-Nine Thousand Four Hundred and 00/100 Dollars ($599,400.00) for the Performance Bond." (Rec. Doc. 1-10, at 1). The Bond states that it was effective from January 21, 2021 to January 20, 2022. *Id.* The Bond issued by Aspen replaced a bond issued by Harco National Insurance Company, which expired on January 20, 2021.

On October 22, 2021, DBi ceased operations abruptly and without notice and terminated its employees on the project, constituting a default under the O&M Contract. On that same day, Plenary emailed an initial Notice of Default to DBi. On October 22, 2021 Plenary informed Aspen that DBi would no longer be manning the Project and requested that Aspen perform under the Bond. On October 24, 2021, Plenary resubmitted the notice to DBi and delivered a Notice of Nonconforming Work to DBI demanding DBi cure the defects caused by its default, including DBi's failure

to provide bridge operators during construction, to ensure the bridge is continuously manned, and to perform activities pursuant to the O&M Contract. That same date, Plenary sent Aspen another letter making a demand under the Bond, and Aspen initiated an investigation into what amount Plenary was entitled under the Bond.

On November 5, 2021, Plenary sent DBi a letter officially terminating the O&M Contract and also informed Aspen of that termination. On November 24, 2021, Plenary provided Aspen with an itemization of its alleged costs incurred as a result of DBi's default, totaling over $830,000 and offered to settle for $599,400 plus $200,000 for Aspen's alleged failure to perform. On December 7, 2021, Aspen notified DBi and Plenary that it would not be renewing the Bond, so the Bond expired January 21, 2022.

On January 12, 2022, Plenary made a renewed demand against the Bond and proof of loss for over $2.4 million, which it claimed it had or would incur to complete the total scope of DBi's work under the five-year O&M Contract. On February 11, 2022, Aspen responded with an offer to tender $118, 191.78 to Plenary but denied the remainder of the claim, explaining that information to substantiate the claim was missing and the documents Plenary provided showed that Plenary was seeking amounts far beyond the Bond's penal sum and for anticipated costs past the Bond's expiration date. Aspen continued to decline to pay additional amounts to Plenary, and that denial resulted in Plenary filing the instant suit against Aspen on August 15, 2022. Plenary asserted two counts against Aspen: (1) breach of contract for failure

to pay the amount demanded by Plenary under the Bond and (2) bad faith penalties under the Louisiana Insurance Code for the failure to pay.

In its breach of contract claim, Plenary argues that, because "Aspen's obligations were triggered during the Bond Term, Aspen is liable for all costs incurred by Plenary, without regard to whether or not the costs were incurred or anticipated to be incurred prior to January 20, 2022," the last day before the Bond expired. (Rec. Doc. 1, at 14). In the instant motion, Aspen seeks partial summary judgment on two legal issues related to Plenary's claims under Performance Bond No. SU39234 ("Bond") issued by Aspen: (1) the term of the bond (and dismissal of any claims for damages related to performance outside the Bond term) and (2) the penal sum of the Bond (and dismissal of any claims for damages in excess of the penal sum). (Rec. Doc. 23-1, at 1). In response, Plenary argues that the motion is premature and there are genuine issues of material fact regarding the extent of Aspen's liability. (Rec. Doc. 31, at 10). Specifically, Plenary disputes whether the parties contemplated that the Bond would be subject to a one-year maximum term

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the

4

record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may

not rest upon the pleadings but must identify specific facts that establish a genuine issue for trial. *See id.* at 325; *Little*, 37 F.3d at 1075.

## DISCUSSION

Aspen argues that the Bond only covers costs incurred for O&M Work performed or to be performed during the Bond's term—not for the entire period of the O&M Contract as Plenary requested—based on the Bond's language itself together with the Comprehensive Agreement with LA DOTD, the O&M Contract with DBi, and the previous bond issued by Harco. (Rec. Doc. 23-1, at 8). Aspen asserts that Plenary is not entitled to amounts for costs incurred after January 20, 2021 and any amount above $599,400. *Id.* at 10.

### I. Contractual Damages

Aspen argues that it is entitled to partial summary judgment narrowing Plenary's breach of contract claim because the plain language of the Bond states that the Bond was only effective to guarantee DBi's performance of services for the one-year period of January 21, 2021 to January 20, 2022. (Rec. Doc. 23-1, at 10). Aspen also argues that the total amount for which Aspen can be liable to Plenary under the Bond is capped at the Bond's penal sum. *Id.* at 12-13. In response, Plenary contends that Aspen's interpretation of the contract leads to absurd consequences, and instead, the Bond Term establishes the time frame in which the subcontractor default will trigger Aspen's obligations. (Rec. Doc. 31, at 23).

"When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."

6

La. Civ. Code art. 2046. A performance bond, which guarantees that a contractor will perform the contract, is a conventional bond, so the language of the bond itself controls its meaning. *Roy Anderson Corp. v. 225 Baronne Complex, LLC*, 280 So. 3d 730, 743 (La. App. 4 Cir. 2019); *Stonecipher v. Mitchell*, 655 So. 2d 1381, 1389 (La. App. 2 Cir. 1995). The language used in the conventional bond must be deemed to fully express the parties' intent when the words are clear and explicit and lead to no absurd consequences. *Emile M. Babst Co. v. U.S. Fid. & Guar. Co.*, 497 So. 2d 1358, 1360 (La. 1986). A suretyship may be qualified, conditioned, or limited in any lawful manner, and obligations set forth in a bond are strictly construed in favor of protecting the oblige. La. Civ. Code art. 3040; *Stonecipher*, 655 So. 2d at 1389; *Cont'l Cas. Co. v. Associated Pipe & Supply Co.*, 447 F.2d 1041, 1051 n.10 (5th Cir. 1971).

The "penal sum" is "the limit of the surety's financial exposure under a performance bond." 4A Bruner & O'Connor Construction Law § 12:22 (2023). It "is the sum stated on the face of the performance bond as the surety's maximum liability to the obligee for completion of the contract or payment of the obligee's actual costs of completion." *Id.*

> Here, the Bond states, in pertinent part:
>
> Be it known that DBI Services, LLC, as Principal, and Aspen American Insurance Company as Surety, meeting the requirements of Louisiana Revised Statutes 48:255(D), hereby bind themselves, in solido, to Plenary Infrastructure Belle Chasse LLC, as Obligee, and other potential claimants, for all obligations incurred by the Principal under its O&M Contract for the maintenance of State Project No. H.004791 in the amount of Five Hundred Ninety-Nine Thousand Four Hundred and 00/100 Dollars ($599,400.00) for the Payment Bond and in the amount of Five Hundred Ninety-Nine Thousand Four Hundred and 00/100 Dollars ($599,400.00) for the Performance Bond furnished in accordance

with Section 16.08(a) of the O&M Contract. The obligations of the Principal and Surety under these Payment and Performance Bonds must continue in full force and effect, until all materials, equipment, and labor have been provided for the maintenance of the Project's current annual term only, and all requirements contained in the O&M Contract for the maintenance of the Project have been completed in a timely, thorough, and workmanlike manner, for the current annual term only and furthermore said bonds are subject to an annual renewal or replacement of such Payment and Performance Bonds in accordance with Section 16.08(a) of the O&M Contract. The parties acknowledge that these Bonds are given under the provisions and limitations contained in Louisiana Revised Statutes 28:250, et seq.

These Payment and Performance Bonds shall be effective from January 21, 2021 to January 20, 2022, unless said bond is released by the Obligee prior thereto, and may be continued by Continuation Certificate by the Principal and Surety.

(Rec. Doc. 1-10, at 1).

Considering the foregoing terms, the Court finds that the language of the Bond is clear and explicit and leads to no absurd consequences, so no further interpretation is needed to determine the parties' intent as to the term of the Bond. The Bond clearly sets out limits to the suretyship: that Aspen's obligations continue for the annual term (January 21, 2021 to January 20, 2022) only, unless the bond is released early by Plenary or if DBi and Aspen extend the Bond. Neither party alleges that the Bond was extended, and Aspen notified Plenary on December 7, 2021 that the Bond would not be renewed. The Bond does not include language triggering obligations for Aspen for the entirety of the O&M Contract with DBi or for any costs incurred or anticipated to be incurred in connection with DBi's obligations to perform after January 20, 2022.

As to the penal sum, the Court also finds that the language of the Bond is clear and explicit: Aspen can be liable under the bond for costs up to $599,400. The Court

need not, as Plenary suggests, look at extrinsic evidence beyond the four corners of the instrument to determine that the parties agreed that Aspen would not be liable for contractual damages in excess of the penal bond amount. Although Plenary argues that additional discovery is required regarding the parties' intent to procure a bond with different terms, any facts as to the parties' intent are not required for the Court to determine the Bond terms for the purposes of this motion.

## II. Bad Faith Penalties

Plenary argues that the penal sum does not apply to its claims for statutory bad faith penalties under Louisiana Revised Statutes 22:1982 and 22:1973. (Rec. Doc. 31, at 20). However, only the breach of contract claim is at issue in the instant motion, not the statutory bad faith penalty claim. Thus, at this time, the Court need not decide whether the statutory bad faith penalties are subject to the limitation of Aspen's liability to the penal sum. Accordingly,

## CONCLUSION

**IT IS HEREBY ORDERED** that the *Motion for Partial Summary Judgment* **(Rec. Doc. 23)** on the issue of the extent of Aspen's liability is **GRANTED**.

New Orleans, Louisiana, this 23rd day of February, 2024.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE